**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILLIAM A. LONG,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA HOUSING AUTHORITY, and<br><br>ADRIANNE TODMAN, in her official capacity as the Executive Director of the District of Columbia Housing Authority,<br><br>Defendants. | ) | Case No. 1:15-cv-00605 |

**COMPLAINT**

## I. INTRODUCTION

1. Plaintiff William A. Long brings this action to prevent the District of Columbia Housing Authority ("DCHA" or "Housing Authority") from terminating his Housing Choice Voucher Program ("HCVP") voucher on the grounds that he is "subject to a lifetime registration requirement under a state or District of Columbia sex offender program" (hereinafter "lifetime registrant").

2. Since 2002, for more than twelve years, Plaintiff has been a tenant within the Housing Authority's HCVP. DCHA admitted Mr. Long into a single room as a resident of a building owned by Community Family Life Services ("CFLS"). Although plaintiff has been a model tenant and has not engaged in any misconduct or criminal activity since his admission into HCVP, the Housing Authority seeks to terminate his assistance because of his status as a life-time registrant.

3. Defendants' actions are contrary to applicable federal law, and violate Plaintiff's due process rights. Plaintiff seeks declaratory relief, injunctive relief, and judicial review of the decision to terminate his HCVP voucher assistance. Plaintiff also seeks a preliminary injunction to require continuation of Plaintiff's HCVP assistance during the pendency of this action.

## II. JURISDICTION

4. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3). Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

5. Plaintiff's claims arise under the United States Housing Act, 42 U.S.C. §§ 1437 *et seq*.; the Quality Housing and Work Responsibility Act 42 U.S.C. §§ 13662, *et seq.*, the Fifth Amendment to the United States Constitution; 42 U.S.C. § 1983; and DCMR § 5804.4.

## III. PARTIES

6. Plaintiff William A. Long is a 56-year-old male who is a resident of the District of Columbia, within the territorial jurisdiction of this Court. He currently receives Social Security Disability Insurance and suffers from end-stage kidney disease, requiring dialysis treatment several times per week. He suffers from significant disabilities..

7. Defendant District of Columbia Housing Authority (DCHA) is a governmental organization of the District of Columbia that administers the Section 8 rental assistance program in the District of Columbia. DCHA administers the Housing Choice Voucher Program (otherwise known as Section 8). On information and belief, DCHA is and at all relevant times herein was a Public Housing Agency within the meaning of the United States Housing Act and its implementing regulations and has contracted with the United States Department of Housing and Urban Development ("HUD") to administer the Housing Choice Voucher Program. DCHA's principal place of business is the District of Columbia.

8. Defendant Adrianne Todman is the Executive Director of DCHA, and as such, she is responsible for the operation and administration of DCHA's programs including, without limitation, the Housing Choice Voucher Program. She is being sued in her official capacity as Executive Director.

## III. STATUTORY AND REGULATORY FRAMEWORK

9. The Housing Choice Voucher Program (a/k/a of Section 8) was created by Congress under Section 8 of the Housing Act and Urban – Rural Recovery Act of 1983, which amended the United States Housing Act of 1937. 42 U.S.C. § 1437f .

10. The purpose of the Section 8 Voucher Program is to aid "low-income families in obtaining a decent place to live and [to] promot[e] economically mixed housing" by providing such families with subsidies to enable them to rent units in the private rental housing market. *Id.*

11. The federal government allocates funds to HUD which contracts with state and local public housing agencies ("PHA's") to administer the Section 8 program. As noted above,

in the District of Columbia, the Section 8 Voucher Program is called the Housing Choice Voucher Program.

12. Under the Section 8 Voucher Program:

    a. Families select and rent units that meet the program housing quality standards. 24 C.F.R. § 982.1(a)(2);

    b. The PHA then reviews the decision and makes a decision to approve a family's unit and tenancy;

    c. Once the tenancy has been approved, the PHA enters into a Housing Assistance Payment ("HAP") Contract with the property owner to subsidize the rent of the eligible families. *Id*. The HAP contract includes the monthly payment made by a PHA to an owner in accordance with the lease. 24 C.F.R. § 982.4; and

    d. As participants in the Section 8 Voucher Program, families must adhere to a set of rules called "family obligations." 24 C.F.R. § 982.551.

13. HUD regulations list fifteen grounds for termination of Section 8 Voucher Program assistance including violation of the family obligations of the program contained in 24 C.F.R. § 982.551. 24 C.F.R. § 982.552(b)-(c). Some violations mandate termination, while others are permissive. *Id.*

14. A PHA may only terminate a participant in the Section 8 Voucher Program for action or inaction by the participant or members of the participant's household in accordance with 24 C.F.R. §§ 982.552-553. *See* 24 C.F.R. § 982.552(a)(1).

15. Should the PHA decide to terminate a participant's Section 8 assistance, 42 U.S.C. 1437d(k) entitles the participant to a specific grievance procedure whereby the participant is to be advised of the specific grounds of any proposed adverse PHA action, the right to notice, and the opportunity to an informal hearing prior to the actual termination of benefits. 24 C.F.R. § 982.555(c)(2).

16. HUD regulations further describe the process that a PHA, such as DCHA, must follow before terminating assistance. *See* 24 C.F.R. § 982.552, §982.553, and § 982.555. Among other requirements, the regulations mandate that "Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6).

17. HUD requires PHAs to adopt a written administrative plan. 24 C.F.R. § 982.54(a). The plan serves to encompass PHA policy on matters for which the PHA has discretion to implement local polices and must contain standards for denying admission and terminating assistance for criminal activity and alcohol abuse. 24 C.F.R. § 982.54(d)(4)(iii). Importantly, those standards must be in accordance with HUD requirements and regulations. 24 C.F.R. § 982.54(b).

**Lifetime Registrants Versus Illegal Drug Users and Alcohol Abusers**

18. In 1998 Congress enacted legislation barring from admission into federally assisted housing programs certain illegal drug users, alcohol abusers and lifetime registrants. *See* Quality Housing and Work Responsibility Act ("QHWRA"), 42 U.S.C. § 13661-13664.

19. HUD thereafter promulgated final regulations implementing QHWRA, which in addition to other items, provide for the denial of assistance under the Section 8 Voucher Program, 24 C.F.R. § 982.552, and describe the specific circumstances under which a PHA must deny admission or terminate assistance for criminals and alcohol abusers, 24 C.F.R. § 982.553.

20. HUD's regulations distinguish between prohibiting admission of participants in the Section 8 Voucher Program and termination of participation from the program. 24 C.F.R. § 5.856, § 960.204(a), and § 982.553(a)(2).

21. With respect to termination of assistance once a participant has been admitted to the Section 8 Voucher Program, HUD's regulations only mention drug criminals, other criminals—*i.e.*, those who engage in violent criminal activity while participating, and alcohol abusers. 24 C.F.R. § 982.553. There is no mention of lifetime registrants. *See id*.

22. With respect to lifetime registrants, the regulations *only* provide that PHA's establish standards to prohibit *admission* to the Section 8 Voucher Program. 24 § 982.554 (titled "Denial of Admission and Termination of Assistance for *Criminals and Alcohol Abusers*"). "Admission" is defined as the point when the family or individual becomes a participant in the program. 24 C.F.R. § 982.4(b). Moreover, PHAs are required to perform the necessary criminal background checks in the State where the housing is located so as to *prohibit admission* of lifetime registrants.

23. There is no federal regulation permitting a PHA to terminate assistance to a participant in the Section 8 Voucher program solely on the basis of the individual's status as a lifetime registrant. 42 U.S.C. § 13663(a) (only discussing the prohibition of *admission* of lifetime registrants); 24 C.F.R. §§ 982.552. In contrast, Congress expressly authorized PHAs to terminate assistance of participants for illegal drug use and alcohol abuse. 42 U.S.C. §13662.

**The Federal Regulations Establish The Scope of DCHA's Authority to Promulgate Local Regulations And Establish Local Policies for The HCVP**

24. The federal regulations governing HUD and DCHA provide that an "administrative plan states PHA policy on matters for which the PHA *has discretion* to establish local policies." 24 C.F.R. § 982.54 (emphasis added). In addition, the federal regulations outline and specify areas where PHAs **do not** have discretion in administering the HCVP at the local level.

25. The federal regulations draw a distinction between mandatory grounds, where PHA must terminate assistance, and those that are discretionary, for which the PHA may terminate. Specifically, there are five mandatory grounds, in which PHAs lack discretion[1], and 12 non-mandatory grounds for termination where public housing authorities like DCHA have discretion to use regulations on how it should prioritize, process and adjudicate different situations involving participants.[2] Status as a lifetime registrant is neither a mandatory nor a discretionary ground for termination of assistance.

26. Nothing in the federal regulations or the federal Housing Act provides that PHAs, such as DCHA, may create entirely *new* grounds for termination.

## V. STATEMENT OF FACTS

27. For more than twelve years, Plaintiff has been a tenant within the Housing Authority's Housing Choice Voucher Program (HCVP).

28. Twenty-three years ago, Plaintiff was convicted of rape. He was released on parole in 1999 and since that time has not had any criminal charges. Plaintiff registered as a sex offender on December 5, 2000, well before he submitted his application for housing assistance to DCHA on December 17, 2001.

29. DCHA admitted Plaintiff into the HCVP program in 2002. Plaintiff was admitted into a single room as a resident of a building owned by Community Family Life Services later that year.

30. When Plaintiff submitted his HCVP application to the Housing Authority on December 17, 2001, he completed all required documentation and provided all information requested of him by both CFLS and HCVP. As indicated by several recertification application in Plaintiff's DCHA case file, Mr. Long has always been forthcoming and truthful in disclosing his sex offense and lifetime registration status. As recently as January 30, 2015, DCHA recertified Plaintiff for HCVP. And as with every other recertification application, Plaintiff again disclosed his status as a lifetime registrant.

---

[1] The mandatory grounds in which PHAs lack any discretion are (1) serious violations of the lease; (2) failure to submit consent forms required for obtaining information on family status as part of any reexamination conducted by the PHA; (3) failure to submit evidence of citizenship or provide documentation of eligible non-citizen status within prescribed timeframes and extensions; (4) if any member of a household is enrolled in an institution of higher education and does not meet strict eligibility requirements; and (5) if any member of the household has ever been convicted of a drug-related criminal activity for manufacture or production of methamphetamine on the premises of federally-assisted housing. *See* 24 C.F.R. § 982.552(b) and § 982.553(b).

[2] The discretionary grounds for termination are found at 24 C.F.R. § 982.552(c). Discretionary grounds for termination include for example violating a family obligation, engaging in violent criminal activity, drug-related criminal activity, or engaging in alcohol abuse. They do not include status as a lifetime registrant.

31. Plaintiff currently rents a unit from CFLS for $801 per month. Plaintiff's lease with CFLS provides that plaintiff pays $203 per month. The Housing Assistance Payment (HAP) that HCVP pays CFLS is $598 per month.

32. In 2007, DCHA unsuccessfully attempted to terminate Plaintiff because of his status a lifetime registrant. As part of DCHA's federally mandated informal hearing process, an impartial hearing officer determined on June 11, 2007 that terminating Plaintiff from HCVP would violate federal law. Specifically, the hearing officer found that the federal regulations governing DCHA only provide DCHA with the authority to prevent admission of lifetime registrants to HCVP, not to terminate admission of already or accidentally admitted lifetime registrants.

33. Following the 2007 informal hearing decision, Plaintiff continued to disclose his lifetime registration as part of several recertification applications. Each time, DCHA recertified Plaintiff's participation in HCVP. In fact, DCHA recertified Mr. Long once again on January 30, 2015.

34. Since DCHA's last attempt to terminate Plaintiff in 2007, HUD issued *guidance* to PHAs for treatment of state registered lifetime sex offenders in federally assisted housing programs. *See* HUD Notice PIH 2012-28 (June 11, 2012). This guidance instructs PHAs to terminate lifetime registrants' housing assistance and references HUD's regulations with respect to sex offenders, 24 C.F.R. § 5.586, § 960.204(a), and §982.553(a)(2). As noted above, these regulations distinguish between prohibiting admission of lifetime registrants and terminating assistance of illegal drug users and alcohol abusers. In now way does HUD's guidance suggest that federal law authorizes termination on the basis of lifetime registration status alone.

35. HUD promulgated Notice PIH 2012-28 without providing notice and opportunity to comment. According to HUD's own regulations, Notice PIH 2012-28 is not a rule, it is merely guidance to PHAs.

36. In 2012, ten years after Plaintiff was admitted to HCVP, the District of Columbia Government enacted DCMR § 5804.1, which states that DCHA shall terminate participation of a family if any member of the household is subject to a lifetime registration requirement under a State's or the District of Columbia's sex offender program.

37. By notice dated June 19, 2014, DCHA notified Plaintiff that HCVP recommended he be terminated from the voucher program on the basis of 14 D.C.M.R. § 5804.1(b) and noted that "[o]n or about December 5, 2000, HCVP participant William A. Long registered with MPD as a Class A Sex Offender. No reference was made to DCMR § 5804.4, which states that DCHA "has the burden of proving that a Family violated one or more its obligations by a preponderance of the evidence."

38. On September 19, 2014, DCHA held an informal hearing before Wyndell O. Banks, Administrative Hearing Officer.

39. On October 3, 2014, the hearing officer issued an informal hearing decision in Plaintiff's favor. Specifically, the hearing officer determined that terminating Plaintiff would violate the Constitution and federal law, and that passing of DCMR § 5804.1 did not change this result. Moreover, the hearing officer determined that under the doctrines of res judicata and collateral estoppel, DCHA could not terminate Plaintiff after already unsuccessfully litigating the same issue in 2007.

40. On October 20, 2014, DCHA appealed the hearing officer's informal hearing decision to its own Executive Director, Defendant Adrianne Todman.

41. On December 23, 2014, Todman reversed the decision of the hearing officer on the grounds that "the hearing officer made an error of law by misinterpreting the U.S. Constitution. The Hearing Officer referred to the relevant regulation as ex post facto, typically used to refer to a criminal law that applies retroactively." Defendant's final decision made no mention of HUD's federal regulations—*i.e.*, the regulations that govern DCHA. Nor did the decision discuss the hearing officer's determinations with respect to the doctrines of res judicata or collateral estoppel.

42. By letter dated December 31, 2014, CFLS was informed that Plaintiff's HCVP rental assistance payments would stop effective January 31, 2015.

43. At all relevant times to this action Mr. Long has remained financially eligible for, and in need of, housing assistance under HCVP. In fact, HCVP recertified Mr. Long on January 30, 2015.

44. Without maintenance of his HCVP voucher and HAP rental assistance payments, Plaintiff's monthly income from Social Security Disability Insurance is insufficient to afford the monthly rent for his current home or to be able to locate alternate affordable housing. Accordingly, despite Community Family Life Service's preference to keep Plaintiff as a tenant and member of the CFLS community, CFLS will be forced to evict Plaintiff without maintenance of Plaintiff's HCVP voucher and HAP rental assistance payments. Moreover, due to Plaintiff's disability and current sex offender registration status it will be very difficult for him to locate alternative housing.

## VI. CLAIMS FOR RELIEF

### COUNT 1

**Violation of 42 U.S.C. § 13662, 42 U.S.C. § 13663(a), 24 C.F.R. § 5.856, § 960.204(a), § 982.553(a)(2), and 42 U.S.C. § 1983.**

45. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 44 above as fully as if set forth verbatim herein.

46. The Defendants' termination of Plaintiff of rental assistance under HCVP violates the federal regulations governing HUD and DCHA.

47. 42 U.S.C. § 13662 does not authorize or even mention lifetime registration as a basis for termination of rental assistance from the Section 8 Voucher Program.

48. 42 U.S.C. § 13663(a) only prohibits admission of lifetime registrants and does not provide PHAs with the authority to terminate lifetime registrants from participation once already admitted into the Section 8 Voucher Program.

49. 24 C.F.R. § 5.856, § 960.204(a), and § 982.553(a)(2) do not provide authority to the Defendants to terminate Plaintiff solely on the basis of his status as a lifetime registrant.

50. Even if DCMR § 5804.1 mandates termination of Mr. Long solely because he is registered as a sex offender, it is illegal and void because it is contrary to law under the governing federal regulations, 24 C.F.R. § 5.856, § 960.204(a), and § 982.553(a)(2). Moreover, 24 C.F.R. § 5.856, § 960.204(a), and § 982.553(a)(2) do not allow Defendants to establish standards that <u>mandate termination</u> of a participant solely on the basis of his or her status as a life time registrant. The regulation only provides that PHAs "must establish standards that *prohibit admission* to the program if any member of the household is subject to a lifetime registration requirement under a State sex offender registration program."

**<u>COUNT 2</u>**

**Violation of the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983.**

51. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 50 above as fully as if set forth verbatim herein.

52. By terminating Plaintiff's assistance under HCVP on grounds that are not authorized by law, Defendants are depriving Plaintiff of his property interest in continued occupancy of his dwelling without adequate procedural due process in violation of the Due Process Clause of the 5th Amendment to the United States Constitution and 42 U.S.C. § 1983.

**<u>COUNT 3</u>**

**Violation of the United States Housing Act, 42 U.S.C. § 1437d(k), 24 C.F.R. § 982.555(c)(2), and 42 U.S.C. § 1983.**

53. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 52 above as fully as if set forth verbatim herein.

54. Pursuant to 42 U.S.C. § 1437d(k) and 24 C.F.R. § 982.555, Plaintiff was entitled to receive notice that contained a "brief statement" of the reasons and grounds for the decision to terminate his assistance under HCVP prior to his hearing.

55. The hearing notice states that termination is due to his status as a lifetime registrant and 14 D.C.M.R. § 5804.1(b). As set forth above, status as a lifetime registrant alone does not warrant termination. Accordingly, DCHA terminated Plaintiff without proper notice of a valid basis for the termination, in violation of 42 U.S.C. § 1347d(k), 24 C.F.R. 982.55(c)(2), and 42 U.S.C. 1983.

## COUNT 4

### The Doctrines of Res Judicata and Collateral Estoppel Apply and Prevent Defendants From Relitigating This Matter

56. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 55 above as fully as if set forth verbatim herein.

57. The hearing officer who issued the informal hearing decision in 2007 in favor of the Plaintiff acted in a judicial a capacity when hearing and deciding on the validity of DCHA's attempt to terminate Plaintiff from HCVP.

58. The issue of whether or not the Housing Authority could terminate Mr. Long solely on the basis of his status as a lifetime registrant was actually litigated and essential to the hearing officer's decision.

59. Defendants are stopped from terminating the Plaintiff on the same basis that led to the 2007 decision.

## COUNT 5

### Violation of DCMR § 5804.4

60. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 59 above as fully as if set forth verbatim herein.

61. DCMR § 5804.4 requires that the Defendants show by a preponderance of evidence that Plaintiff violated one of its obligations. Defendants have failed to show that Plaintiff committed any violation.

62. Defendants' termination of Mr. Long violates DCMR § 5804.4.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

1. Enter a declaratory judgment that the actions and omissions of the Defendants DCHA and Adrianne Todman set forth above violate Plaintiff's rights under
   a) 42 U.S.C. § 13662, 42 U.S.C. § 13663(a), 24 C.F.R. § 5.856, § 960.204(a), § 982.553(a)(2);

   b) the Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983;

   c) 42 U.S.C. § 1437d(k), 24 C.F.R. § 982.555(c)(2), and 42 U.S.C. § 1983; and/or

   d) DCMR § 5804.4; or

   e) Alternatively find that the doctrines of res judicata and collateral estoppel estop the Defendants from terminating Plaintiff's assistance under HCVP.

2. Enter a preliminary and permanent injunction:

   a) Enjoining Defendants DCHA and Adrianne Todman from terminating Plaintiff's assistance under HCVP on the basis that he is a lifetime registrant;

   b) Ordering Defendants DCHA and Adrianne Todman to immediately reinstate Plaintiff's eligibility for HCVP, and to pay any missing HCVP benefits retroactively;

   c) Ordering Defendants DCHA and Adrianne Todman to reimburse plaintiff for any money he has spent out of pocket to cover that portion of his rent that would have been paid by his HCVP assistance and that Defendants have failed and refused to pay;

   d) Award Plaintiff his costs and reasonable attorney's fees; and

   e) Grant Plaintiff such other and further relief as the court deems necessary and proper.

Respectfully Submitted:

/s/ William M.R. Barrett
William M.R. Barrett
Volunteer Attorney
WASHINGTON LEGAL CLINIC FOR THE HOMELESS
Associate Attorney
VORYS, SATER, SEYMOUR AND PEASE LLP
1909 K Street, NW, Ninth Floor
Washington, D.C. 20006-1152
Phone: (202)-467-8846
Fax: (202)-533-9009
Email: wmrbarrett@vorys.com